IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO A. WILLIAMS,

        Plaintiff,                 No. 2:11-cv-1687 LKK AC P

      vs.

GARY SWARTHOUT, et al.,[1]

        Defendants.              <u>FINDINGS and RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner who is proceeding pro se and in forma pauperis on a complaint for relief pursuant to 42 U.S.C. § 1983.  The action proceeds on plaintiff's third amended complaint against three prison officials at CSP-Solano, alleging that they violated his Eighth Amendment rights when they delayed scheduling his hand surgery.  ECF No. 14. Plaintiff sues the defendants in their individual capacities, and seeks money damages.

        Defendants have moved to dismiss plaintiff's third amended complaint, arguing that: (1) plaintiff fails to state a claim under the Eighth Amendment; (2) plaintiff has failed to allege sufficient facts of defendants' individual involvement; and (3) defendants are entitled to

_____

[1] Defendant Gary Swarthout was dismissed from this action on February 8, 2012.  ECF No. 15.

1

1  qualified immunity.  ECF No. 21.  Plaintiff has opposed the motion, and defendants have replied.

2  ECF Nos. 23, 24.  For the reasons given below, the undersigned recommends that the court deny

3  the motion to dismiss.

4                  Background

5              *Plaintiff's Specific Factual Allegations*

6          Defendants are prison administrators responsible for approving, scheduling, and

7  authorizing surgical procedures.  ECF No. 14 at 2-3; 8, ¶ 15; 11, ¶ 25; ECF No. 23 at 5.

8  Defendant Traquina is the Chief Medical Officer responsible for approving and authorizing

9  surgical procedures.  Id.  Defendant Austin is the Chief Executive Officer of Health Care

10  Services responsible for policy and procedures, and for planning and organizing the health care

11  system.  Id.  Defendant Medford is a Medical Administrator responsible for the authorization of

12  Removal for Medical Reasons Transportation.  Id.

13          On May 21, 2009, plaintiff had spinal surgery.  ECF No. 14, Third Amended

14  Complaint ("TAC"), at 6, ¶ 2.  On June 1, 2009, plaintiff submitted a "Health Care Services

15  Request Form" complaining of pain and numbness in his right hand, including "pins and needle

16  vibrations."  Id. at 6, ¶ 3; 13.  On June 3, 2009, plaintiff submitted a request form to defendants,

17  complaining of pain in his right hand.  Id. at 6, ¶ 4; 14.  On that same day, plaintiff also

18  complained to his primary care physician about the pain in his hand.  Id.  at 6, ¶ 4; 15.

19          On June 8, 2009, plaintiff saw his neurosurgeon, who diagnosed him with carpal

20  tunnel syndrome and referred him to a hand specialist.  Id. at 5-6, ¶¶ 6-7; 20.  On June 25, 2009,

21  Dr. Albert Mitchell at CSP-Solano conducted a "Nerve Conduction Study Upper Extremity" on

22  plaintiff, with the results showing nerve damage to plaintiff's right arm and hand, and carpal

23  tunnel syndrome.  Id. at 7, ¶ 7; 23.

24          On August 26, 2009, plaintiff had a consultation with his neurosurgeon, who

25  referred him to another hand surgeon.  Id. at 8, ¶ 12; 28.

26          On September 10, 2009, plaintiff filed an inmate health care appeal to defendants

1  complaining of pain and asking to see the hand surgeon.  Id. at 8, ¶ 15; 60.  The response, dated

2  October 1, 2009 and signed by non-defendant M. de la Vega, RN, CF, reads that plaintiff's

3  request was forwarded to the scheduling office and that "[a]s we are in the midst of changing

4  orthopedic providers, you will be wait-listed.  In the meantime, please follow up with your

5  primary doctor for pain management."  Id. at 8-9, ¶ 16; 60; ECF No. 23 at 3-4.

6          On October 2, 2009, plaintiff appealed the October 1, 2009 decision.  See ECF

7  No. 14 at 9, ¶ 17; 60.  The first level appeal response, dated November 17, 2009 and signed by

8  non-defendant B. McPherson, reads that plaintiff's referral to see an orthopedic hand surgeon

9  had been approved and that he was on a waiting list to be scheduled within the next six months.

10  Id. at 60, 62-63.  The response also reads that CSP-Solano "just received a new contract for

11  orthopedics."  Id. at 63.

12          On November 20, 2009, plaintiff appealed the first level response.  See ECF No.

13  14 at 9, ¶ 19; 61.  The second level appeal response, dated December 28, 2009 and signed by

14  non-defendant Y. Chen, M.D. on December 29, 2009, reads that plaintiff "can expect an

15  appointment sometime on or before March 31, 2010.  Please be advised that the Outside

16  Scheduling Office is currently experiencing a backlog in appointments for orthopedic

17  consultations. . . ."  See ECF. No. 14 at 9-10, ¶20; 64-66.

18          On December 31, 2009, plaintiff appealed the second level response.  See ECF

19  No. 14 at 10, ¶ 21; 61.  The Director's level decision, dated March 29, 2010 and signed by non-

20  defendant J. Walker, reads that plaintiff's appeal was denied, and noted that plaintiff's "medical

21  condition has been evaluated by licensed clinical staff and [plaintiff was] receiving treatment as

22  deemed medically necessary."  ECF No. 14 at 10, ¶ 22; 57-59.

23          On February 1, 2010, plaintiff saw orthopedic surgeon Doctor Casey, who

24  advised plaintiff that plaintiff needed carpal tunnel release to correct the nerve damage to

25  plaintiff's right hand.  Id. at 10-11, ¶ 23; 40-41.  On May 28, 2010, plaintiff had carpal tunnel

26  release surgery performed.  Id. at 11, ¶ 24; 50.

1   A review of the exhibits attached to plaintiff's complaint show that plaintiff filed

2  Health Care Services Request Forms on June 1, 2009; June 3, 2009; July 26, 2009; August 2,

3  2009; August 15, 2009; August 29, 2009; September 7, 2009; September 23, 2009; October 6,

4  2009; October 13, 2009; October 22, 2009; November 13, 2009; November 17, 2009; November

5  28, 2009; January 9, 2010; February 12, 2010; February 20, 2010; April 24, 2010; June 26, 2010;

6  April 5, 2011; and June 26, 2011.  See ECF No. 14 at 13-51, 73-75.

7   By memorandum dated April 27, 2010, defendant Traquina acknowledged receipt

8  of plaintiff's "request for interview" dated April 22, 2010 and received April 26, 2010.  See ECF

9  No. 14 at 47.  The memorandum reads that plaintiff had been "scheduled for a consultation/

10  procedure on/around next month May 2010" and that "no specific date will be released due to

11  security issues."  Id.

12   Defendants Mefford and Traquina also signed off on a "Request for Authorization

13  of Temporary Removal for Medical Reasons," arranging for plaintiff's February 1, 2010 visit to

14  an outside orthopedics clinic.  See ECF No. 14 at 40.

15   Plaintiff alleges that he experienced pain and suffering as a result of the delay

16  from June 1, 2009 through May 28, 2010.  Id. at 11, ¶¶ 24-25.  Plaintiff continues to suffer pain,

17  and has complained to defendants about his post-operative pain.  ECF No. 14 at 11, ¶ 24.

18  Plaintiff also alleges that he "has damage to his right hand and arm nerve damage and muscular

19  atrophy and continues to have damage to his hand and continued symptoms.  Plaintiff has injury

20  to his arm and hand muscle deterioration and nerve damage to his right hand and arm due to

21  Defendants' delay in scheduling surgery."  See ECF No. 23 at 8, Plaintiff's Declaration, ¶ 5.

22   Standard of Review

23   *Motions to Dismiss*

24   A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

25  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

26  Bank, N.A., 654 F.Supp.2d 1104, 1109 (E.D.Cal.2009).  Under the "notice pleading" standard of

4

the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain" statement of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizin Cmty. Learing Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF, Inc., 559 F.3d at 1071 (citations and quotation marks omitted).

        In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted); see also Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 980 n. 18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, [the] court may consider facts that are contained in material of which the court may take judicial notice.") (citation and quotation marks omitted).

////

////

////

1    *Stating a Claim under 42 U.S.C. § 1983*

2    The Civil Rights Act under which this action was filed provides as follows:

3    Every person who, under color of [state law] . . . subjects, or
     causes to be subjected, any citizen of the United States . . . to the

4    deprivation of any rights, privileges, or immunities secured by the
     Constitution . . . shall be liable to the party injured in an action at

5    law, suit in equity, or other proper proceeding for redress.

6    42 U.S.C. § 1983.

7        The statute requires that there be an actual connection or link between the actions

8    of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.

9    Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71

10   (1976); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988). "A person 'subjects' another to

11   the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative

12   act, participates in another's affirmative acts or omits to perform an act which he is legally

13   required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588

14   F.2d 740, 743 (9th Cir. 1978), (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)).  The

15   requisite causal connection can be established not only by some kind of direct personal

16   participation in the deprivation, but also by setting in motion a series of acts by others which the

17   actor knows or reasonably should know would cause others to inflict the constitutional injury.

18   Id. at 743-44.

19       When an inmate seeks money damages, as opposed to injunctive relief, the

20   inquiry into causation must be individualized and focus on the duties and responsibilities of each

21   individual defendant whose acts or omissions are alleged to have caused a constitutional

22   deprivation. See Leer, 844 F.2d at 633.  Sweeping conclusory allegations will not suffice to

23   prevent summary judgment. Id. at 634.  The inmate must show: (1) that the specific prison

24   official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth

25   Amendment; and (2) that this indifference was the actual and proximate cause of the deprivation

26   of the inmate's right to be free from cruel and unusual punishment. Id. See also OSU Student

Alliance v. Ray, 699 F.3d 1053, 1072, n.12 (9th Cir. 2012) ("To state a § 1983 claim against a government defendant, the plaintiff must allege that the defendant acted with sufficient culpability to breach a duty imposed by the relevant provision of federal law.")

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

The Ninth Circuit has held that a supervisor may be liable

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.  Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."  (internal citations and quotations omitted).

Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Discussion

Plaintiff alleges that defendants, who were responsible for scheduling his hand surgery, for issuing governing medical treatment policy, and for arranging transport, delayed treatment of his diagnosed carpal tunnel syndrome.  Plaintiff alleges that he suffered pain during the delay, about which he made the defendants repeatedly aware, and that he has suffered, among other things, nerve damage and muscular atrophy as a result of the delay.

Defendants have moved to dismiss the third amended complaint, arguing that plaintiff has failed to state an Eighth Amendment claim, that plaintiff has failed to allege

1    sufficient facts to establish defendants' individual involvement, and that defendants are protected

2    by qualified immunity.  ECF No. 21-1 at 1.

3                    *Eighth Amendment: Deliberate Indifference to Serious Medical Needs*

4            The Ninth Circuit has held that, in order to maintain an Eighth Amendment claim

5    based on prison medical treatment, an inmate must show "deliberate indifference to serious

6    medical needs."  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006):

7            In the Ninth Circuit, the test for deliberate indifference consists of
             two parts.  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991),
8            *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104
             F.3d 1133 (9th Cir. 1997) (en banc).  First the plaintiff must show
9            a "serious medical need" by demonstrating that "failure to treat a
             prisoner's condition could result in further significant injury or the
10           'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing
             *Estelle*, 429 U.S. at 104, 97 S.Ct. 285).  Second, the plaintiff must
11           show the defendant's response to the need was deliberately
             indifferent. *Id.* at 1060.  This second prong – defendant's response
12           to the need was deliberately indifferent – is satisfied by showing
             (a) a purposeful act or failure to respond to a prisoner's pain or
13           possible medical need and (b) harm caused by the indifference.  *Id.*
             Indifference "may appear when prison officials deny, delay or
14           intentionally interfere with medical treatment...." *Id.* at 1059
             (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir.
15           1988)).  Yet, an 'inadvertent [or negligent] failure to provide
             adequate medical care' alone does not state a claim under § 1983.
16           *Id.* (citing *Estelle*, 429 U.S. at 105, 97 S.Ct. 285).  A prisoner need
             not show his harm was substantial; however, such would provide
17           additional support for the inmate's claim that the defendant was
             deliberately indifferent to his needs. *Id.* at 1060.  If the harm is an
18           'isolated exception' to the defendant's 'overall treatment of the
             prisoner [it] ordinarily militates against a finding of deliberate
19           indifference.' *Id.* (citations omitted).

20   Jett, 439 F.3d at 1096.

21           The Ninth Circuit has recognized that a delay in treatment may give rise to a

22   claim under 42 U.S.C. § 1983 when the delay results in further harm to the inmate.  See, e.g.,

23   Jett, 439 F.3d at 1097 (inmate presented sufficient information to present a genuine issue of

24   material fact where inmate had fractured his thumb yet did not see a hand specialist, as

25   recommended by other treating doctors, for more than nineteen months after the initial injury, in

26   which time the fracture had healed badly, resulting in continuing diminished use of the hand);

1  Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989); Shapely v. Nevada Bd. Of State Prison

2  Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is

3  insufficient to state a claim of deliberate medical indifference....[Prisoner] would have no claim

4  for deliberate medical indifference unless the denial was harmful.") Cf. McGuckin v. Smith, 974

5  F.2d 1050, 1061 (9th Cir. 1992) ("unnecessary continuation of [plaintiff's] condition and pain

6  caused him 'harm' upon which a § 1983 claim can be based. . . ." when inmate waited more than

7  three and half years after an injury causing  massive herniation of plaintiff's back and upper

8  torso before receiving the surgery required to correct his condition.), overruled on other grounds

9  by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

10              *Facial Sufficiency of Plaintiff's Eighth Amendment Claims*

11              Plaintiff has alleged sufficient facts about defendants' delay of his surgery to

12  allow those Eighth Amendment claims to go forward.  Defendants correctly state the general rule

13  that vague and conclusory allegations regarding supervisory officials are insufficient.  See ECF

14  No. 21-1 at 6.  In the operative complaint, however, plaintiff does not seek to hold the

15  defendants liable for the actions of subordinates.  Rather, he sues the defendants individually on

16  the basis of their personal roles in the delay.  Plaintiff specifically alleges that each defendant

17  had authority over the authorization and/or scheduling of his surgery, and that each had notice of

18  his pain and urgent need for treatment.  See Ivey, 673 F.2d at 268.  Plaintiff is entitled to an

19  inference, at this stage, that defendants received the notice plaintiff swears he sent them.[2]  See

20  Jett, 439 F.3d at 1098.

21              Plaintiff has additionally alleged that the delay in treatment resulted in pain

22

23      [2]  In their reply, filed May 21, 2012, defendants argue that "[t]he only factual allegation
    Williams' [sic] makes is that he notified 'prison officials' that the pain medication was not
    working, that his condition was worsening, and requesting surgery on many occasions. (*Id.*)

24  Notably, Williams never states that he notified any named Defendant."  ECF No. 24 at 4.  To the
    extent defendants are arguing that plaintiff, in his opposition to the motion to dismiss, is not

25  factually specific enough, defendants' argument should be overruled, as plaintiff is not required
    to plead sufficient facts in his opposition.  The third amended complaint reads that plaintiff

26  notified defendants of his pain.  See, e.g., ECF No. 14 at 6, ¶ 4; 11, ¶ 24.

1    during the delay, and caused further persisting damage to his hand and arm.  See McGuckin, 974

2    F.2d at 1061.  Plaintiff has accordingly alleged a colorable Eighth Amendment claim based on

3    delay in medical treatment.  The court need not determine, at this stage and on this limited

4    record, whether or not plaintiff's medical needs were purposefully ignored, or whether he was

5    receiving appropriate, continuing care, as defendants suggest.  See ECF No. 21-1 at 4-5; Toguchi

6    v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004).  Those questions are beyond the scope of the

7    Rule 12(b)(6) inquiry, which is limited to the sufficiency of the allegations to state a claim.

8            Nor does the court need to decide if the change in orthopedic providers to CSP-

9    Solano excuses the delay, as defendants also suggest.  ECF No. 21-1 at 5.  The undersigned

10   notes, however, that the change in providers would appear to be an administrative concern which

11   should not ordinarily conflict with the state's responsibility to provide inmates with medical

12   care.  See Hudson v. McMillian, 503 U.S. 1, 6 (1992); Jett, 439 F.3d at 1097.

13           The undersigned recommends that defendants' motion to dismiss accordingly be

14   denied.

15           *Qualified Immunity*

16           Generally, government officials performing discretionary functions are shielded

17   from liability for civil damages insofar as their conduct does not clearly violate established

18   statutory or constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  If the law is

19   clearly established, the immunity defense ordinarily should fail, since a reasonably competent

20   public official should know the law governing his conduct.  Id. at 818-19.

21           In this case, defendants concede as they must that the law was clearly established

22   at the relevant times.  ECF No. 21-1 at 7; ECF No. 24 at 4.  The Ninth Circuit settled the law

23   regarding deliberate indifference in the treatment of orthopedic injuries in 2006 when it decided

24   Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006).

25           However, the undersigned would be reluctant to foreclose defendants from raising

26   the immunity defense in the future, after development of a fuller record.  See Harlow, 457 U.S.

at 818 (noting that immunity defense allows for resolution of insubstantial claims on summary

judgment).  Accordingly, the undersigned recommends that defendants' motion to dismiss the

complaint on qualified immunity grounds be denied, without prejudice to renewal of the defense

on summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion to

dismiss (ECF No. 21) be denied, without prejudice to renewal of the defense of qualified

immunity on summary judgment.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

eight (28) days after being served with these findings and recommendations, any party may file

written objections with the court and serve a copy on all parties.  Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

objections shall be served and filed within twenty-eight (28) days after service of the objections.

The parties are advised that failure to file objections within the specified time may waive the

right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 31, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb/will1687.fr