UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO A. WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>GARY SWARTHOUT, et al.,<br><br>  Defendants. | No.  2:11-cv-01687 LKK AC P<br><br>ORDER AND FINDINGS &<br>RECOMMENDATIONS |

Plaintiff, a state prisoner, proceeds pro se and in forma pauperis with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Currently pending before the court is defendants' motion for summary judgment, ECF No. 42, as well as their motion to strike evidence submitted in opposition by plaintiff. ECF No. 45. The court has considered plaintiff's opposition to the motion, the documents submitted on August 6, 2013, supplementing plaintiff's third amended civil rights complaint, as well as those documents originally filed with the third amended complaint. ECF Nos. 43, 40, 14. For the reasons discussed below, the undersigned recommends granting defendants' motion for summary judgment.

I.   Allegations of the Complaint

In his third amended complaint, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by delaying the scheduling of his carpal tunnel release

surgery. ECF No. 14 at 3. Named in the complaint are three defendants: Austin, the CEO of Health Care Services at California State Prison-Solano ("CSP-SOL"), Traquina, the Chief Medical Officer ("CMO") at the same prison, and Mefford, a Correctional Health Services Administrator II. ECF No. 14 at 2-3.

The third amended complaint alleges that in May 2009, plaintiff received back surgery. Id. at 6. On June 1, 2009, plaintiff was seen for a follow-up visit and complained of numbness and pain in his right hand. Id. On June 8, 2009, plaintiff was diagnosed with carpal tunnel syndrome and was referred to a hand surgeon. Id. at 6-7. A nerve conduction study was also ordered on that date and performed on June 25, 2009. Id. at 6-7. The study revealed nerve damage to plaintiff's right arm and hand. Id. at 7. On August 26, 2009, plaintiff had another consultation with his neurosurgeon who referred him to another hand surgeon. Id. at 8.

Throughout the months of July, August, and September 2009, plaintiff submitted numerous Health Care Request Forms (CDC 7362) complaining about the pain in his right hand, wrist, and arm, and requesting to see the hand surgeon. ECF No. 14 at 7-8. On October 1, 2009, plaintiff received a response to his requests indicating that he was being placed on the waiting list for orthopedic surgery because the prison was in the midst of changing orthopedic providers. Id. at 8-9. Plaintiff filed an inmate grievance and received a response on November 17, 2009 indicating that he would be scheduled for hand surgery within the next six months. Id. at 9. After pursuing further administrative appeals, he received essentially the same response. Id. at 9-10.

On February 1, 2010, Defendants Austin, Mefford, and Traquina were notified that plaintiff needed to be temporarily removed from the prison for medical reasons. ECF No. 14 at 10. On the same date, plaintiff met with the orthopedic surgeon for consultation who recommended carpal tunnel release surgery to correct the nerve damage to plaintiff's right hand. Id. at 10-11. Plaintiff was finally scheduled for hand surgery on May 28, 2010, but states that he still suffers from hand pain and problems stemming from the delay in surgery. Id. at 11.

II.     Defendants' Motion for Summary Judgment

On September 23, 2013, defendants filed a motion for summary judgment on the grounds that: 1) defendants did not personally participate in any constitutional violation; 2) defendants

2

were not deliberately indifferent to any known, serious medical need; 3) plaintiff received appropriate medical care; 4) plaintiff suffered no harm as a result of any delay in scheduling surgery; and, 5) defendants are entitled to qualified immunity.  ECF No. 42.  Accompanying the motion was a notice pursuant to Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).  ECF No. 42-1.

III.   Defendants' Motion to Strike Plaintiff's Evidence

Defendants object to portions of plaintiff's declaration as well as his unauthenticated exhibits submitted in opposition to the motion for summary judgment on the grounds that they are inadmissible.  ECF No. 45.  With respect to plaintiff's declaration, defendants contend that he has no personal knowledge that defendants were aware of his complaints regarding his hand surgery.  Id. at 2.  The portion of his declaration stating as much is mere speculation.  ECF No. 45 (citing ECF No. 43 at 25, ¶ 4).

Pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure, an affidavit submitted in opposition to a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  At the summary judgment stage, the court focuses not on the admissibility of evidence's form but on the admissibility of its contents.  Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001).  As plaintiff would not be competent to testify about the defendants' state of mind, the motion to strike this portion of plaintiff's affidavit will be granted.

The remainder of defendants' motion to strike plaintiff's medical records as unauthenticated will be denied as unnecessary.  As a matter of judicial economy, the court finds it unnecessary to reach the portion of the summary judgment motion pertaining to plaintiff's medical treatment.  Therefore, the court will deny the motion to strike this evidence.

IV.   Legal Standards Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of

1  proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation,
2  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
3  The moving party may accomplish this by "citing to particular parts of materials in the record,
4  including depositions, documents, electronically store information, affidavits or declarations,
5  stipulations (including those made for purposes of the motion only), admission, interrogatory
6  answers, or other materials" or by showing that such materials "do not establish the absence or
7  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
8  support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden
9  of proof at trial, "the moving party need only prove that there is an absence of evidence to support
10 the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);
11 see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after
12 adequate time for discovery and upon motion, against a party who fails to make a showing
13 sufficient to establish the existence of an element essential to that party's case, and on which that
14 party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure
15 of proof concerning an essential element of the nonmoving party's case necessarily renders all
16 other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so
17 long as whatever is before the district court demonstrates that the standard for entry of summary
18 judgment, . . ., is satisfied." Id. at 323.

19     If the moving party meets its initial responsibility, the burden then shifts to the opposing
20 party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
21 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
22 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
23 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
24 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
25 Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the
26 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
27 governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
28 Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On February 2, 2012, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V.   Facts

For purposes of the instant summary judgment motion, the court finds that the following facts are undisputed:[1]

---

[1] While the parties' pleadings contain additional facts, both disputed and undisputed, pertaining to the medical history and treatment of plaintiff, the court does not discuss them here because they are not necessary for resolution of the pending motion for summary judgment.

A.   Undisputed Facts

• At all relevant times, Plaintiff Mario Williams (F-96771) was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was housed at California State Prison-Solano (CSP-SOL). ECF No. 14.

**Defendant Mefford**

• At all relevant times, Counselor Mefford was employed at CSP-SOL as a Correctional Health Services Administrator II (CHSA II). ECF No. 42-5 at ¶ 1.

• As a CHSA II, Counselor Mefford's duties included serving as the administrator of the Correctional Treatment Center. ECF No. 42-5 at ¶ 2.

• The Correctional Treatment Center provides inpatient health services to inmates who did not require acute care. Id.

• Counselor Mefford was responsible for planning, organizing, and directing clinical and health services, including radiology, laboratory, physical therapy, environmental, medical records, and food and nutrition. Id.

• Counselor Mefford worked with medical, custodial, nursing, and mental health managers and administrators to formulate overall policy for health care operations at the facility. Id.

• Counselor Mefford also worked in conjunction with other health care managers to review and respond to health care appeals and coordinate related inmate grievance matters. Id.

• One of Counselor Mefford's duties was to respond to inmate grievances at the First Level of Review. Id.

• However, Counselor Mefford did not respond to the grievance submitted by inmate Mario Williams (F-96771) regarding the treatment of his carpal tunnel injury. Id.

• The Request for Authorization for Temporary Removal for Medical Reasons bears Counselor Mefford's printed name, but it does not bear her signature. Compare ECF No. 42-5 at ¶ 5 (Mefford Declaration) with ECF No. 14 at 40 (authorization form).

• The Request for Authorization of Temporary Removal for Medical Reasons shows that Williams was being transported outside of the prison for specialty care. ECF No. 42-5 at ¶ 5; ECF No. 14 at 40.

**Defendant Dr. Traquina**

• At all times relevant to William's claims, Dr. Traquina was employed as Chief Medical Officer (CMO) at California CSP-SOL. ECF No. 42-7 at ¶ 1.

- As CMO, Dr. Traquina's duties included directing supervision of medical professional practices, medical resource management, medical program management, and the medical delivery system. ECF No. 42-7 at ¶ 2.

- Dr. Traquina's duties included ensuring that the institution conducted clinical aspects of medical programs in accordance with California Prison Healthcare Services requirements and generally accepted medical standards of care. Id.

- Dr. Traquina's duties also included responding to inmate grievances at the Second Level of Review. Id. at ¶ 3.

- Dr. Traquina did not respond to the grievance that inmate Mario Williams (F-96771) submitted regarding the treatment of his carpal tunnel injury. Id.

- The Request for Authorization of Temporary Removal for Medical Reasons shows that Williams was being transported outside of the prison for specialty care. Id.

- The Request for Authorization of Temporary Removal for Medical Reasons bears Dr. Traquina's printed name, but it does not bear his signature. Id.

- In a request for interview, dated April 27, 2010, Williams indicated that he had concerns about his medical care. ECF No. 42-7 at ¶ 4; ECF No. 14 at 47.

- In response to the request for interview, Dr. Traquina's staff was assigned to investigate Williams's concerns. Id.

- The investigation found that Williams [had] been seen in February and was scheduled for a consultation or procedure in the next month. Id.

- During the times relevant to Williams's claims, requests for specialty services were typically made by a patient-inmate's primary care provider, who would submit a Physician's Request for Services, CDC Form 7243. ECF No. 42-7 at ¶ 6.

- The Physician's Request for Services was initially processed by the Utilization Management Nurse who entered the information on the form into the InterQual computer-based database. Id.

- InterQual is a set of medical standards that are clinically based on best medical practices, clinical data, and medical literature. Id.

- InterQual criteria are a first-level screening tool that assist medical providers in determining whether a proposed service is clinically indicated or if further evaluation of the patient is necessary. Id.

• Once a patient's medical information is entered into the database, InterQual indicates whether the requested service or procedure is medically recommended. Id.

• After entering information from the Physician's Request for Services form, the Utilization Management Nurse would forward the InterQual results to the Chief Physician and Surgeon, who would review the InterQual recommendation. Id.

• If InterQual indicated that the service or procedure was medically recommended, the Chief Physician and Surgeon would usually approve the request. Id.

• Once a request for services was approved, an outside scheduler scheduled the procedure with the provider. Id.

• The scheduling of outside medical services was performed by non-medical personnel. ECF No. 42-7 at ¶ 7.

• If the Physician's Request for Services was denied, the primary care physician could appeal the denial to the Medical Authorization Review Committee (MAR). Id. at ¶ 6.

• If the MAR denied the request, it went to the final level of review, the Health Care Review Subcommittee. Id.

**CEO Austin**

• At all relevant times, Defendant Austin was employed as Chief Executive Officer, Health Care Services (CEO) at CSP-SOL. ECF No. 42-6 at ¶ 1.

• As CEO, Defendant Austin was responsible for administratively coordinating the twenty-four hour a day, seven-days a week operation of health care services at CSP-SOL. Id. at ¶ 2.

• Austin was responsible for establishing and maintaining a management program that ensured that health care services comply with appropriate standards, legal mandates, and strategic plans. Id.

• Austin worked with custody, medical, mental health, dental, nursing, other health care managers, and the Warden to ensure compassionate, safe, timely, effective, efficient, and patient-centered care. Id.

• Austin also supervised program managers responsible for administrative service functions within the institution. Id.

B. Purportedly Disputed Facts

Although plaintiff denies the accuracy of defendants' statement of facts pertaining to the defendants' lack of responsibility for approving or scheduling surgeries as well as their general

unawareness of the medical needs of individual inmates, there is no conflicting evidence on this point. Plaintiff merely cites to the general Duty Statements for the positions held by the defendants, which describe the overall responsibilities and desirable qualifications for such positions. See ECF Nos. 42-5 at 4-7; 42-6 at 2; 42-7 at 5-8. This evidence does not contradict the defendants' specific declarations that they were not responsible for scheduling plaintiff's carpal tunnel surgery and that they did not personally review the request to temporarily remove plaintiff from the prison for medical reasons. See ECF Nos. 42-5 at 2; 42-6 at 4-6; 42-7 at 3; 43 at 9-10. Therefore, the court deems the following additional facts undisputed.

**Defendant Mefford**

- Counselor Mefford was not responsible for approving or scheduling surgeries or other medical services. Id. at ¶ 3.

- As a CHSA II, Counselor Mefford was generally not aware of the medical needs of individual inmates. Id. at ¶ 4.

- Counselor Mefford did not review the Request for Authorization of Temporary Removal for Medical Reasons attached to William's Third Amend[ed] Complaint. ECF No. 14 at 40; ECF No. 42-5 at ¶ 5.

**Defendant Dr. Traquina**

- As CMO, Dr. Traquina was not generally aware of the medical needs of individual inmates. Id.

- Dr. Traquina did not review the Request for Authorization of Temporary Removal for Medical Reasons attached to Williams's Third Amended Complaint. ECF No. 42-7 at ¶ 4; ECF No. 14 at 40.

- As CMO, Dr. Traquina was not responsible for approving or scheduling surgeries. Id. at ¶ 7.

- Requests for surgery were reviewed by the Chief Physician and Surgeon, not the CMO. Id.

**CEO Austin**

- Defendant Austin was not responsible for approving or scheduling surgeries or other medical services. Id. at ¶ 3.

- As CEO, Defendant Austin was not generally aware of the medical needs of individual inmates. She did not participate in the inmate appeal process or review request for health care services. Id. at ¶ 4.

9

While plaintiff denies defendants' assertions that they did not become aware of plaintiff's dissatisfaction with his medical care until they were served with the complaint in the instant case, he has produced no evidence to the contrary. See ECF No. 43 at 10-11. Specifically, plaintiff's health care appeal form and a memorandum dated May 10, 2010 from Defendant Austin's Administrative Assistant, Alice LaVergne, does not demonstrate that any of the defendants had prior knowledge of his need for carpal tunnel surgery. See ECF No. 14 at 48, 60-61. Therefore, the following additional facts are deemed undisputed by the court.

- Counselor Mefford did not become aware of Williams's dissatisfaction with the medical care he received while housed at CSP-SOL until being notified that she was named as a defendant in this lawsuit. ECF No. 42-5 at ¶ 6.

- Dr. Traquina did not become aware of Williams's dissatisfaction with the medical care he received while housed at CSP-SOL until being notified that he was named as a defendant in this lawsuit. ECF No. 42-7 at ¶ 5.

- Defendant Austin did not become aware of Williams's dissatisfaction with the medical care he received while housed at CSP-SOL until receiving notification that she was named as a defendant in this lawsuit.

VI. Analysis

The Civil Rights Act under which this action was filed provides that:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the plaintiff's alleged deprivation. Rizzo v. Goode, 423 U.S. 362, 371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory personnel are customarily not liable under § 1983 for the actions of their employees under a theory of respondeat superior. Thus, when a named defendant holds a supervisorial position, the causal

1   link between him and the claimed constitutional violation must be specifically alleged.  See Fayle

2   v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

3   1978).  "Supervisors can be held liable for: (1) their own culpable action or inaction in the

4   training, supervision, or control of subordinates; (2) their acquiescence in the constitutional

5   deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous

6   indifference to the rights of others." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000)

7   (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)).  Accordingly, to

8   establish liability, plaintiff must offer specific facts to satisfy one of the prongs.  Vague and

9   conclusory allegations concerning an official's involvement in civil rights violations are not

10  sufficient.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

11          In the present case, there exists no issue of material fact linking the actions of the

12  defendants to the alleged violation of plaintiff's Eighth Amendment rights.  Put simply, plaintiff

13  has sued the wrong individuals.  The undisputed material facts demonstrate that Defendant

14  Mefford had no personal participation in the delay in scheduling plaintiff's carpal tunnel surgery.

15  See Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978) (stating that " § 1983 liability can be

16  established not only by "some kind of direct personal participation in the deprivation, but also by

17  setting in motion a series of acts by others which the actor knows or reasonably should know

18  would cause others to inflict the constitutional injury.").  Her pre-printed name appears on the

19  form requesting authorization for plaintiff's temporary removal on February 1, 2010 for a follow-

20  up appointment for carpal tunnel syndrome, but her undisputed affidavit indicates that she never

21  signed nor saw the form prior to the commencement of the present litigation.  See ECF No. 42-5

22  at 2.  As a result, she had no knowledge that plaintiff had been wait-listed for carpal tunnel

23  surgery, much less that his medical condition was emergent.  For this reason, the undersigned

24  recommends granting the summary judgment motion as to Defendant Mefford.

25          Likewise, there is no material fact in dispute concerning Defendant Austin's lack of

26  personal participation.  The only relevant evidence pertaining to this defendant consists of a

27  memorandum sent to plaintiff from Austin's administrative assistant dated May 10, 2010

28  indicating that plaintiff was scheduled for surgery "in the next 60 days."  See ECF No. 14 at 48.

1    This is insufficient to establish Defendant Austin's personal knowledge or participation in the

2    scheduling of plaintiff's hand surgery.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

3    1982) (stating that vague and conclusory allegations are not sufficient).  The only relevant fact it

4    establishes is that Defendant Austin's office received a letter from plaintiff and that a member of

5    her staff responded to it.  Accordingly, the motion for summary judgment should be granted as to

6    Defendant Austin.

7    As to Defendant Dr. Traquina, the only evidence connecting him to the delay in plaintiff's

8    surgery is a memorandum dated April 27, 2010 that he signed indicating that plaintiff was

9    scheduled for surgery in the next month.  ECF No. 14 at 47.  This memorandum was sent in

10   response to plaintiff's requests for interview dated April 22, 2010 and April 26, 2010.  Id.  Based

11   on these undisputed dates in the record, there was approximately one month between the date of

12   Defendant Traquina's knowledge of plaintiff's medical issue and the resulting surgery to address

13   it.  As the Chief Medical Officer of CSP-SOL, Defendant Dr. Traquina is only liable if he was

14   responsible for failing to train or control his subordinates, acquiesced in the constitutional

15   deprivation, or engaged in personal conduct that showed a reckless or callous indifference to the

16   rights of others.  See Cunningham, 229 F.3d as 1292.  Here there is no allegation of a failure to

17   train by Defendant Dr. Traquina.  See ECF No. 14.  The undisputed material facts demonstrate

18   that his personal conduct did not amount to a reckless or callous indifference to plaintiff's Eighth

19   Amendment rights.  Therefore, the undersigned recommends granting the summary judgment

20   motion as to Defendant Dr. Traquina.

21   It should be noted that these deficiencies were pointed out to plaintiff in this court's order

22   screening the second amended complaint.  ECF No. 13.  Rather than amending his complaint to

23   name the proper defendants, however, plaintiff persisted with his allegations that these three

24   defendants were personally responsible.  The undisputed evidence establishes otherwise.

25   VII.   Conclusion

26   Because the record taken as a whole could not lead a rational trier of fact to find for the

27   plaintiff, there is no genuine issue for trial.  See Matsushita, 475 U.S. at 587.  Accordingly,

28   defendants have established that they are entitled to judgment as a matter of law because

1  defendants did not personally participate in any constitutional violation.  Consequently, the
2  undersigned finds it unnecessary to reach the additional four grounds raised in defendants'
3  summary judgment motion.
4       Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike plaintiff's
5  evidence (ECF No. 45) be granted in part and denied in part as indicated herein.
6       IT IS FURTHER RECOMMENDED that:
7       1.  Defendants' motion for summary judgment (ECF No. 42) be granted; and,
8       2.  This civil action be dismissed with prejudice.
9       These findings and recommendations are submitted to the United States District Judge
10 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days
11 after being served with these findings and recommendations, any party may file written
12 objections with the court and serve a copy on all parties.  Such a document should be captioned
13 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
14 objections shall be served and filed within fourteen days after service of the objections.  The
15 parties are advised that failure to file objections within the specified time may waive the right to
16 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
17 DATED: May 7, 2014

                                                                           */s/ Allison Claire*
                                                                           ALLISON CLAIRE
                                                                           UNITED STATES MAGISTRATE JUDGE

defendants did not personally participate in any constitutional violation.  Consequently, the undersigned finds it unnecessary to reach the additional four grounds raised in defendants' summary judgment motion.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike plaintiff's evidence (ECF No. 45) be granted in part and denied in part as indicated herein.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 42) be granted; and,

2. This civil action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 7, 2014

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE